U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 APR 25  PM 2: 45

# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

CLERK

_wsr_

DEPUTY CLERK

| | |
|---|---|
| **Carmel-Ann Maisonet** ) | **Civil Action No.** |
| **f/k/a Carmel-Ann Downey;** ) | 2 : 12 - cv - 84 |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | **COMPLAINT AND** |
| ) | **DEMAND FOR JURY TRIAL** |
| **Mark Donuts, Inc.,** ) | |
| **Leal Management Corp.,** ) | |
| **David Leal,** ) | |
| **Jason Leal,** ) | |
| **Manuel Leal,** ) | |
| **Ramses Diaz;** ) | |
| **Defendants** ) | |

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

### NATURE OF THE ACTION

This is an action under Title VII of the "Civil Rights Act of 1991," 42 U.S.C. §§ 2000e-2(a) (1), 2000e -3(a), and the Vermont Fair Employment Practices Act, 21 V.S.A. §§ 495 (a)(1),(a)(5) brought by Carmel-Ann Maisonet, formerly known as Carmel-Ann Downey ("Ms. Maisonet" or "Plaintiff") against her former employers for gender discrimination, sexual harassment in the form of a sexually hostile work environment, and retaliatory wrongful termination. Ms. Maisonet also asserts common-law causes of action for negligent supervision and retention and intentional infliction of emotional distress in connection with Defendants' wrongful course of conduct and inaction.

As alleged with greater specificity below, Plaintiff was subjected to a sexually harassing course of conduct in the workplace.

She was subsequently wrongfully terminated when her employers unlawfully retaliated against her for making a good-faith complaint of sexual harassment.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 USC §§ 451, 1331 1332, 1337, and 1343.  This action is instituted pursuant to 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a) and involves a federal question as well as diversity jurisdiction.

2.  Plaintiff's corresponding state-law claims arise out of the same core operative facts and supplemental jurisdiction over such claims is vested in this Court under 28 U.S.C. §1367.  Plaintiff's state-law claims arise under 21 V.S.A. §§ 495(a)(1), (a)(5) and the common law of the State of Vermont.

3.   Venue is properly in the Court pursuant to 28 U.S.C. § 1391(b)(2).  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Vermont.

4.  Plaintiff timely filed her complaint with the State of Vermont, Office of the Attorney General, and the Equal Employment Opportunity Commission ("EEOC").

5.  Plaintiff received her Right to Sue Letter from the EEOC on or about March 16, 2012 and has, therefore, timely exhausted her administrative remedies.  This complaint was timely filed within ninety days of Plaintiff's receipt of the Right to Sue letter.

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

2

**PARTIES**

**6.**     Ms. Maisonet is a citizen of Vermont and a resident of Bennington County.  Ms.

Maisonet was at all relevant times an "employee," as defined by 42 U.S.C. §

2000e(f) and 21 V.S.A. §495d(2), of the Defendants Leal Management Corp.

("LMC") and/or Mark Donuts, Inc. ("Mark Donuts").  (LMC and Mark Donuts are

referred to collectively as the "Corporate Defendants.")

**7.**     Mark Donuts is an active Vermont corporation with a principal place of business

at 237 North Street, Bennington Vermont.  Mark Donuts operates a Dunkin'

Donuts franchise at this location, and has done so at all relevant times.

**8.**     Mark Donuts was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21

V.S.A. § 495d(1) at all relevant times.

**9.**     LMC is an active New York corporation, with a business address of 3005

Eastchester Road, Room 2, Bronx, New York, 10469.  LMC provides management

services to Mark Donuts as well as to other Dunkin' Donuts franchises and did so

at all relevant times.

**10.**    LMC was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21 V.S.A. §

495d(1) at all relevant times.

**11.**    With respect to Ms. Maisonet, LMC and Mark Donuts were, at all relevant times,

joint employers who shared and co-determined those matters governing the

essential terms of her employment.

**12.**    At all relevant times, Manuel Leal was the owner of Mark Donuts.

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

3

13. Manuel Leal was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21 V.S.A. § 495d(1) at all relevant times.

14. David Leal was at all relevant times the Director of Retail Operations for LMC.

15. David Leal was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21 V.S.A. § 495d(1) at all relevant times.

16. Jason Leal was at all relevant times an officer and/or employee of LMC whose responsibilities included overseeing some staff training at Mark Donuts, and ensuring that Mark Donuts adhered to franchisor requirements.

17. Jason Leal was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21 V.S.A. § 495d(1) at all relevant times.

18. Upon information and belief, Ramses Diaz is a citizen of New York and a resident of Washington County.

19. Ramses Diaz was at all relevant times Plaintiff's direct supervisor, and a "district manager" employed by LMC, whose responsibilities included overseeing operations at multiple Dunkin' Donuts locations, including the store in Bennington where Plaintiff worked.

20. Ramses Diaz was an "employer" as defined by 42 U.S.C. § 2000e(b) and by 21 V.S.A. § 495d(1) at all relevant times.

21. Because defendants David Leal, Jason Leal, and Manuel Leal and Ramses Diaz were Plaintiff's supervisors, and as a matter of Vermont and federal law, their actions and failures to act are attributable to Corporate Defendants, LMC and

4

Mark Donuts.

## STATEMENT OF THE FACTS

### PLAINTIFF IS SEXUALLY HARASSED BY HER SUPERVISOR

22.   Plaintiff began working for the Defendants at the 237 North Street Dunkin'
      Donuts in November 2008 and her employment there continued until she was
      unlawfully terminated on May 5, 2009. She began her employment as a "crew
      member" but was soon promoted to store manager. Ms. Maisonet received
      bonuses and raises during the course of her employment and did not receive any
      negative performance reviews or disciplinary action.

23.   Starting in January 2009 and continuing through her unlawful termination,
      Plaintiff was subjected to sexual, harassing, inappropriate, vulgar and demeaning
      comments by her direct supervisor, defendant Ramses Diaz.

24.   Mr. Diaz made comments to Plaintiff including but not limited to the following:

      A.   Mr. Diaz told Plaintiff that he had been "getting pussy" since
           he was nine years old and that he was great in bed;

      B.   Mr. Diaz repeatedly threatened to fire anyone who "went
           over his head" and stated that he was a former marine and
           would "kill" anyone who threatened his job;

      C.    Mr. Diaz asked Plaintiff if she thought he, Mr. Diaz, had nice
           eyes or a nice "butt";

      D.   Mr. Diaz told Plaintiff that he thought her sister was "hot"

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

and that she, Plaintiff's sister, should leave her husband for Mr. Diaz;

E.    Mr. Diaz told Plaintiff that if her sister ever wanted a real man he would "help her out";

F.    Mr. Diaz told Plaintiff he knew that Plaintiff enjoyed looking at Emidios Ramos' (Mr. Diaz's predecessor) "butt" and taunted Plaintiff that Mr. Ramos was Plaintiff's "muffin" and "butter buns"; and

G.    Mr. Diaz repeatedly asked Plaintiff if another store manager, employed by one or both of Defendants, was a lesbian.

25.   Plaintiff felt uncomfortable, distressed, harassed and threatened by these comments and repeatedly asked Mr. Diaz to stop making such comments.

26.   Mr. Diaz did not stop and continued to make similar and other intimidating comments until Plaintiff was unlawfully terminated.

### PLAINTIFF REPORTS THE SEXUAL HARASSMENT

27.   Plaintiff first complained of Mr. Diaz's comments to Emidios Ramos, a district manager for LMC.

28.   Mr. Ramos preceded Mr. Diaz as district manager over the territory that included the Mark Donuts location, but managed a different territory at all time periods relative to the Complaint.

29.   Mr. Ramos told Plaintiff he would address her concerns, but did not do so.

6

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

30.  When Mr. Diaz continued to make sexual, harassing and threatening comments, Plaintiff complained of Mr. Diaz's actions to Cindy Joy and Bertha Sargent, managers of other Dunkin' Donuts franchises operated by one or both Corporate Defendants.

31.  Neither Ms. Joy nor Ms. Sargent reported Mr. Diaz's conduct, nor did they take any other actions to stop him from harassing Plaintiff.

32.  In March 2009, as Mr. Diaz had not ceased making sexual and harassing comments, Plaintiff reported her concerns and discomfort to Mr. Robert Alberti, a corporate regional liaison for Dunkin' Donuts, the franchiser of the store where she worked.

33.  Plaintiff told Mr. Alberti she feared that Mr. Diaz would fire her for complaining about Mr. Diaz's conduct, because Mr. Diaz had previously threatened, in Plaintiff's presence and in the presence of Bertha Sargent, to fire anyone who "went over his head" or threatened his job.

34.  Mr. Alberti reported Plaintiff's concerns to Defendant David Leal.

35.  On or about April 3, 2009, Defendants David Leal and Jason Leal, met with Plaintiff to discuss the complaint she had made to Mr. Alberti.  David Leal told Plaintiff she should have reported her concerns to him directly and not to Mr. Alberti and expressed anger with Plaintiff.  Plaintiff told David and Jason Leal that Mr. Diaz had threatened to dismiss anyone who "went over his head," and that she was concerned that Diaz would have fired her had she complained to

7

Witten, Woolmington & Campbell, P.C.
Bennington and Manchester, Vermont

David Leal directly.

**DEFENDANTS RETALIATE AGAINST PLAINTIFF BY WRONGFULLY TERMINATING HER**

36.  On May 5, 2009, Defendants David and Jason Leal took Plaintiff into an office at the Bennington Dunkin' Donuts location where she worked and commanded her to sit down. There were no available chairs so Plaintiff followed the orders she was given and sat on the floor. David and Jason Leal terminated Plaintiff's employment while she sat on the floor in front of them.

37.  When Plaintiff inquired as to why she was fired, David and Jason Leal told her it was because: (i) she had contacted Mr. Alberti instead of bringing her complaints to them; (ii) they had determined that her complaints of harassment by Mr. Diaz were false; and (iii) she had engaged in "solicitation," *i.e.* operating a "side business" while working as manager of the Mark Donuts location.

38.  Plaintiff's Notice of Termination provides that she was fired for filing a false claim.

39.  A significant or motivating factor in the unlawful acts described herein was an intention to harass and discriminate against Plaintiff because of her gender and to retaliate against her because of her complaint to management regarding the harassment.

40.  Following her unlawful termination by Defendants, Plaintiff applied for and received unemployment benefits, unopposed by any of the Defendants.

41.  Plaintiff also attempted to mitigate her damages by applying for over fifty

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

positions in a wide geographic area.  However, she has only obtained part-time employment and partial unemployment benefits from the State of Vermont from the date of her termination through the filing of this Complaint.

42.   Plaintiff has been informed by potential employers that Defendants give her unfavorable references and that Defendants' "crew" employees make derogatory and inflammatory comments about her to customers, such as that she was fired for "selling sex out the back door".

43.   As a direct and proximate cause of Defendants' actions, Plaintiff has suffered injuries as further described and detailed throughout the remainder of this Complaint.

### INVESTIGATION OF THE SEXUAL HARASSMENT AND UNLAWFUL TERMINATION

44.   Plaintiff filed a complaint of sexual harassment and retaliatory termination with the State of Vermont, Office of the Attorney General, Civil Rights Unit of the Public Protection Division on or about August 13, 2009.

45.   Mr. Michael Powers, Civil Rights Investigator for the State of Vermont, Office of the Attorney General ("Mr. Powers") conducted an investigation over a period of several months, interviewing witnesses, and reviewing documents submitted by both Plaintiff and certain of the Defendants.

46.   On February 18, 2011 Mr. Powers issued a fourteen-page report that described his investigative efforts, summarized the statements of witnesses, and concluded that Defendant Mark Donuts had unlawfully retaliated against Plaintiff for

9

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

making a complaint of sexual harassment that was reasonably founded by Mr.
Diaz's sexual and demeaning remarks. The report also noted that Mark Donuts
acknowledged having fired Ms. Maisonet because she complained about being
sexually harassed.

47.  The report further concluded that there was sufficient evidence to conclude that
the "solicitation" reason given for Plaintiff's termination was a pretext used to
justify Plaintiff's termination.

48.  The Vermont Attorney General's office then forwarded the charge to the United
States Equal Employment Opportunity Commission (the "EEOC") for review. On
November 3, 2011, the EEOC adopted the decision stated in Mr. Power's report.

49.  On March 16, 2012, the EEOC issued Plaintiff a Notice of Right to Sue.

### JASON LEAL SEXUALLY HARASSES PLAINTIFF

50.  In a separate incident, occurring in February or March 2009, Defendant Jason
Leal ordered Plaintiff to watch an internet video on a company computer that
depicted a woman engaging in sexual acts/intercourse with a horse or donkey.
The computer was located in the back of the Bennington Dunkin' Donuts location
on North Street where Plaintiff worked for Defendants as a manager.

51.  Plaintiff protested that she did not want to watch the video because it was
"disgusting."

52.  In response, Jason Leal laughed at Plaintiff, admonished her to, "Come on; come
on," and beckoned her with his hand into the back of the store to watch the video

with him, Ramses Diaz, and one Richard Morse, a former employee of

Defendants.   At the time, Plaintiff was Mr. Morse's supervisor.

53. Because Jason Leal was her superior, Plaintiff felt she had no choice but to watch

the video of a woman engaging in sexual acts/intercourse with the animal, and

she did watch the video.  She further felt she could not complain about the matter

because Jason Leal was her supervisor.

54. Plaintiff felt uncomfortable, distressed, harassed and threatened by being forced

by her superior Jason Leal to watch a video of a woman engaging in sexual

acts/intercourse with a horse/donkey.

55. This incident evidences the general hostile work environment in which Plaintiff

worked, and evidences the specific hostility directed at Plaintiff by her employers.

**COUNT I: TITLE VII VIOLATION: GENDER DISCRIMINATION**

56. Plaintiff incorporates the foregoing paragraphs by reference.

57. The facts alleged above constitute violations of Title VII of the Civil Rights Act of

1991 in the nature of gender discrimination and sexual harassment rising to the

level of creating a hostile work environment.

58. As a female employee, Ms. Maisonet is entitled to the protections provided by

Title VII of the Civil Rights Act of 1991.

59. The harassment was sufficiently severe and pervasive to alter the conditions of

Plaintiff's employment and to create an abusive working environment.

60. Defendants were aware of the gender discrimination and sexual harassment to

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

11

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

which Ms. Maisonet was subjected and failed to take any remedial actions.

61.    Mr. Diaz was aided in accomplishing the gender discrimination and harassment by virtue of his relationship with the Corporate Defendants, and by his relationship with the other individual defendants.

62.    Jason Leal was aided in accomplishing the gender discrimination and harassment by virtue of his relationship with the Corporate Defendants, and by his relationship with the other individual defendants.

63.    Plaintiff has suffered damages of lost past and future earnings, lost benefits, and emotional and physical distress, including embarrassment, discomfort, insecurity, mental anguish, and being stigmatized as a result Defendants' violations of Title VII of the Civil Rights Act of 1991.

64.    As Defendants' actions were willful, wanton, or, at the very least, in reckless disregard of Plaintiff's rights, Plaintiff is further entitled to punitive damages as provided by Title VII of the Civil Rights Act of 1991.

## COUNT II: VIOLATION OF THE VERMONT FAIR EMPLOYMENT PRACTICES ACT: GENDER DISCRIMINATION

65.    Plaintiff incorporates the foregoing paragraphs by reference.

66.    The facts alleged above constitute violations of the Vermont Fair Employment Practices Act in the nature of gender discrimination and sexual harassment rising to the level of creating a hostile work environment.

67.    As a female employee, Ms. Maisonet is entitled to the protections provided by the Vermont Fair Employment Practices Act.

12

68. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment.

69. Defendants were aware of the gender discrimination and sexual harassment to which Ms. Maisonet was subjected and failed to take any remedial actions.

70. Mr. Diaz was aided in accomplishing the gender discrimination and harassment by virtue of his relationship with the Corporate Defendants, and by his relationship with the other individual defendants.

71. Jason Leal was aided in accomplishing the gender discrimination and harassment by virtue of his relationship with the Corporate Defendants, and by his relationship with the other individual defendants.

72. Plaintiff has suffered damages of lost past and future earnings, lost benefits, and emotional and physical distress,  including embarrassment, discomfort, insecurity, mental anguish, and being stigmatized as a result of Defendants' violations of the Vermont Fair Employment Practices Act.

73. As Defendants' actions were willful, wanton, or, at the very least, in reckless disregard of Plaintiff's rights, Plaintiff is further entitled to punitive damages as provided by the Vermont Fair Employment Practices Act.

**COUNT III: TITLE VII VIOLATION: UNLAWFUL RETALIATION**

74. Plaintiff incorporates the foregoing paragraphs by reference.

75. As a female employee, Ms. Maisonet is entitled to the protections provided by Title VII of the Civil Rights Act of 1991.

13

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

76.  Defendants unlawfully retaliated against Plaintiff, by terminating her employment, because she made a good-faith claim of sexual harassment, in violation of Title VII of the Civil Rights Act of 1991.

77.  Defendants' termination of Plaintiff's employment was intentional and performed in violation of her rights.

78.  Plaintiff continues to suffer ongoing damages as a direct consequence of her unlawful termination.

79.  Plaintiff has suffered damages of lost past and future earnings, lost benefits, and emotional and physical distress,  including embarrassment, discomfort, insecurity, mental anguish, and being stigmatized as a result of her termination.

80.   Plaintiff suffered a miscarriage in October 2009 as a result of the financial and emotional stress caused by Defendants' wrongful conduct, including the stress proximately caused by her wrongful termination.

81.  As Defendants' actions were willful, wanton, or, at the very least, in reckless disregard of Plaintiff's rights, Plaintiff is further entitled to punitive damages as provided by Title VII of the Civil Rights Act of 1991.

**COUNT IV: VIOLATION OF THE VERMONT FAIR EMPLOYMENT PRACTICES ACT: UNLAWFUL RETALIATION**

82.  Plaintiff incorporates the foregoing paragraphs by reference.

83.  As a female employee, Ms. Maisonet is entitled to the protections provided by the Vermont Fair Employment Practices Act.

84.  Defendants unlawfully retaliated against Plaintiff, by terminating her

14

employment, because she made a good-faith complaint of sexual harassment, in violation of the Vermont Fair Employment Practices Act.

85.   Defendants' termination of Plaintiff's employment was intentional and performed in violation of her rights.

86.   Plaintiff has suffered damages of lost past and future earnings, lost benefits, and emotional and physical distress,  including embarrassment, discomfort, insecurity, mental anguish, and being stigmatized as a result of her termination.

87.   Plaintiff suffered a miscarriage in October 2009 as a result of the financial and emotional stress proximately caused by Defendants' wrongful conduct, including the stress caused by her wrongful termination and inability to obtain employment.

88.   As Defendants' actions were willful, wanton, or, at the very least, in reckless disregard of Plaintiff's rights, Plaintiff is further entitled to punitive damages as provided by the Vermont Fair Employment Practices Act.

## COUNT V: NEGLIGENT SUPERVISION, TRAINING, AND RETENTION

89.   Plaintiff incorporates the foregoing paragraphs by reference.

90.   Under Vermont common law, Defendants owed Plaintiff the duty to use reasonable care to avoid harming her.  Defendants further had a duty to anticipate and to guard against the "human traits" of their employees which, unregulated, are likely to harm others.

91.   Defendants, other than Mr. Diaz, negligently and inappropriately failed to

15

supervise and train their employee, Mr. Diaz, such that he engaged in a course of sexually harassing and discriminatory behavior towards Plaintiff. Further, Defendants negligently retained Mr. Diaz following Plaintiff's complaints to managers employed by the other Defendants.

92. Those Defendants' negligent training, supervision, and retention of Mr. Diaz proximately caused the Plaintiff to be harassed and to endure a hostile work environment and caused Plaintiff great emotional and physical distress for which she is entitled to damages pursuant to Vermont common law.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff incorporates the foregoing paragraphs by reference.

94. The acts described above constitute the tort of intentional infliction of emotional distress under Vermont common law.

95. Defendants' oppressive conduct and abuse of their positions of authority was done intentionally or with reckless disregard of the probability of causing emotional distress, and resulted in extreme emotional distress to Plaintiff that was actually or proximately caused by Defendants' conduct.

96. Said conduct was outrageous and extreme and exceeds the bounds of decency of a civilized society.

97. Plaintiff has suffered actual damages emotional and physical distress, including embarrassment, discomfort, insecurity, mental anguish, being stigmatized as a result of her termination, being unable to obtain other full-time employment and

16

suffering a miscarriage in October 2009.

**98.** As Defendants' conduct evidenced personal ill will, insult and oppression and demonstrated a reckless or wanton disregard for Plaintiff's rights and well-being, Plaintiff is entitled to punitive damages under Vermont common law.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

**A.** Award Plaintiff damages in the form of past and future pecuniary losses resulting from her unlawful termination by Defendants, including but not limited to appropriate back-pay with prejudgment interest, lost benefits provided by Defendants during her employment, job-search expenses and front-pay, in amounts to be determined at trial;

**B.** Award Plaintiff damages to compensate her for past and future nonpecuniary losses resulting from her unlawful termination by Defendants, including but not limited to emotional and physical pain, suffering and inconvenience, in amounts to be determined at trial;

**C.** Order Defendants to pay Ms. Maisonet punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial;

**D.** Award Plaintiff her reasonable attorneys' fees and costs incurred since her unlawful termination and in bringing and pursuing this action;

**E.** Grant such other relief as the Court deems just and equitable.

WITTEN, WOOLMINGTON & CAMPBELL, P.C.
BENNINGTON and MANCHESTER, VERMONT

17

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Date: April 24, 2012

Amy L. Klingler, Esq
Attorney for the Plaintiff
Witten, Woolmington & Campbell, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
alk@wittenetal.com
802-362-2560

Patrick J. Bernal, Esq.
Attorney for the Plaintiff
Witten, Woolmington & Campbell, P.C.
4900 Main Street
P.O. Box 2748
Manchester Center, VT 05255
pjb@wittenetal.com
802-362-2560

WITTEN, WOOLMINGTON & CAMPBELL, P.C.

BENNINGTON and MANCHESTER, VERMONT

18